1  DEVIN M. SENELICK (State Bar No. 221478)
   DARON L. TOOCH (State Bar No. 137269)
2  KATHERINE M. DRU (State Bar No. 280231)
   **HOOPER, LUNDY & BOOKMAN, P.C.**
3  1875 Century Park East, Suite 1600
   Los Angeles, California 90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181

5  Attorneys for Plaintiffs NUTRISHARE, INC.,
   PATIENT ONE, PATIENT TWO, and PATIENT
6  THREE

7

8                  **UNITED STATES DISTRICT COURT**

9      **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

10

11  NUTRISHARE, INC., a California
    corporation; PATIENT ONE, an individual;
12  PATIENT TWO, an individual; and PATIENT
    THREE, an individual,
13
                Plaintiffs,
14
          vs.
15
    CONNECTICUT GENERAL LIFE
16  INSURANCE COMPANY, a Connecticut
    Corporation; CIGNA HEALTH AND LIFE
17  INSURANCE COMPANY, a Connecticut
    Corporation; and DOES 1 THROUGH 10,
18  inclusive,

19                Defendants.

| CASE NO. |
| --- |
| **COMPLAINT FOR:** |
| **(1) Enforcement Under 29 U.S.C. § 1132(a)(1)(B)** |
| **(2) Enforcement Under 29 U.S.C. § 1132(a)(2) For Breach of Fiduciary Duty** |
| **(3) Violation of California Business & Professions Code §§ 17200 et seq.** |
| **(4) Breach of Implied Contract** |
| **(5) Services Rendered** |
| **(6) Breach of Covenant of Good Faith and Fair Dealing** |
| **(7) Intentional Interference With Prospective Economic Advantage** |
| **(8) Negligent Interference With Prospective Economic Advantage** |
| **Demand for trial by jury** |

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Plaintiffs Nutrishare, Inc. ("Nutrishare") and Patient One, Patient Two, and Patient Three[1] bring this Complaint against Defendants Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna").  Patient One, Patient Two, and Patient Three are referred to together as the "Patients," and Nutrishare and the Patients are referred to together as "Plaintiffs."  Plaintiffs allege as follows:

## INTRODUCTION

1.      Cigna advertises and sells health insurance policies, including without limitation Preferred Provider Organization ("PPO") plans, to individuals by representing that the individuals can obtain their healthcare from any healthcare provider of their choice, including out-of-network providers.  On information and belief, Cigna typically charges more for these products than for products with more restrictive provider options, such as Health Maintenance Organization ("HMO") plans.

2.      Nutrishare is a provider of long-term in-home total parenteral nutrition ("TPN") services.  Patients who suffer from conditions that necessitate long-term TPN to obtain the nutrition they need to survive require the highest quality TPN services in order to avoid potentially life-threatening infections and complications that are common when TPN is not administered properly.  Nutrishare is a specialized "center of excellence," and Nutrishare strives to and does provide patients a significantly decreased rate of life-threatening central line infections and

---

[1]  The names and identities of Patient One, Patient Two, and Patient Three have been withheld to protect the Patients' confidential health information.  *See Doe v. John F Kennedy Univ.*, C-13-01137 DMR, 2013 WL 456506, *31 (N.D. Cal. Aug. 27, 2013) ("The Ninth Circuit has identified three situations in which parties have been allowed to proceed anonymously: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of a sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution.")  *See also Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69 (9th Cir. 2000).  Anonymity in this case is necessary under the second category identified by the Ninth Circuit, to preserve privacy in a matter of a sensitive and highly personal nature.  The Patients' identifying information will be separately provided to Cigna and be disclosed to this Court as necessary and subject to appropriate protective measures.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  hospitalizations, as well as a markedly increased quality of life.  Nutrishare does not have a

2  contract with Cigna, and is considered an "out-of-network provider."

3      3.      At the same time that it is selling policies that allow out-of-network benefits,

4  Cigna is retaliating against patients who use or attempt to use their out-of-network benefits,

5  including the Patients, by making threatening telephone calls to those patients, by directing the

6  patients' physicians to encourage the patients to switch from out-of-network providers to inferior,

7  in-network providers, and by underpaying and/or failing to pay the patients' out-of-network

8  providers.  These actions by Cigna cause the patients to incur healthcare costs for which they

9  should not be financially liable, and deprive the patients of the bargained-for benefits of their

10  health insurance policies.

11      4.      Cigna likewise improperly denies payment and/or underpays for healthcare

12  services provided by Nutrishare to Cigna members for the purported reason that Nutrishare "did

13  not obligate its patients to pay their full cost share obligation, such as the copayment, deductible

14  and/or coinsurance, or did not bill its patients for the same," or similar words to the same effect.

15  Cigna uses this rationale to justify its non-payment of claims even where Nutrishare has billed

16  patients for their full copayments, where Nutrishare has attempted to collect and/or collected

17  amounts due, where Cigna has not informed Nutrishare of the amount of patient liability (if any),

18  and/or where the member actually had no remaining copayment obligation.  There is absolutely no

19  excuse for Cigna's failure to pay for the claims of these patients.  Yet, Cigna members who

20  receive TPN services from Nutrishare now are being faced with personal liability for all of the

21  charges due to Cigna's failure to pay.

22      5.      Cigna's conduct deprives patients of the advertised and bargained-for out-of-

23  network benefits included with its PPO plans, improperly forces the Patients to incur personal

24  financial liability for their healthcare services, and deprives providers like Nutrishare of amounts it

25  is owed for healthcare services rendered to Cigna members.

26      6.      Cigna's conduct violates the Employee Income Retirement Security Act, 29

27  U.S.C. § 1002, *et seq.* ("ERISA"), constitutes an unfair business practice, is a breach of the

28

1   implied contract between Cigna and Nutrishare, interferes with the care Nutrishare provides to its

2   patients, and was done in bad faith.

## JURISDICTION AND VENUE

4       7.      This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. §

5   1331, because the action arises under the laws of the United States; pursuant to 29 U.S.C. §

6   1332(e)(1), because the action seeks to enforce rights under the Employee Retirement Income

7   Security Act ("ERISA"); and pursuant to 28 U.S.C. § 1367(a), because the State law claims are so

8   related to the federal claims that they form part of the same case or controversy.

9       8.      This Court further has jurisdiction over this Action pursuant to 28 U.S.C. § 1332

10  because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete

11  diversity exists between Plaintiffs and Cigna.

12      9.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)

13  because a substantial part of the events or omissions giving rise to the claims alleged herein

14  occurred in this Judicial District, and because one or more of the Defendants conducts a

15  substantial amount of business in this Judicial District; and pursuant to 29 U.S.C. § 1132(e)(2)

16  because it is the Judicial District where the breach took place, and because one or more of the

17  Defendants conducts a substantial amount of business in this Judicial District.

## THE PARTIES

19      10.     Nutrishare is a California corporation with its principal place of business in Elk

20  Grove, California.  Nutrishare is a home infusion provider that specializes exclusively in caring for

21  long-term home Total Parenteral Nutrition ("TPN") consumers.

22      11.     Patient One is an individual who resides in Memphis, Tennessee, and who has a

23  PPO health benefits plan administered by Cigna.  Patient One has received in-home TPN services

24  from Nutrishare on a continual basis since February 2012.

25      12.     Patient Two is an individual who resides in Evington, Virginia, and who has a

26  PPO health benefits plan administered by Cigna.  Patient Two has received in-home TPN services

27  from Nutrishare on a continual basis for approximately fifteen years.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1159487.5

13.     Patient Three is an individual who resides in Rochester, New York, and who has a PPO health benefits plan administered by Cigna.  Patient Three has received in-home TPN services from Nutrishare on a continual basis since the summer of 1999.

14.     Plaintiffs are informed and believe that Connecticut General Life Insurance Company and Cigna Health And Life Insurance Company Cigna are Connecticut corporations with their principal places of business in Bloomfield, Connecticut, and are licensed and certified to, and do, sell insurance and conduct business in the State of California.

15.     Plaintiffs are informed and believes that Cigna underwrites fully insured health care insurance policies, which individuals may subscribe to, either by themselves or through their employer.  Plaintiffs are informed and believe that Cigna also enters into administrative service agreements with employers who provide health insurance plans to their employees.  Pursuant to these agreements, Cigna is the claims administrator for the employers' health benefit plans.  At all relevant times, Plaintiffs have dealt directly with Cigna, submitted claims for reimbursement to Cigna, communicated about the claims with Cigna, appealed denials and underpayment of claims to Cigna, and received denials and payments, if any, from Cigna.

16.     Plaintiffs are informed and believe that Cigna is in possession of all facts, information and data concerning and relating to the authorization, processing, determination, pricing, payment, and appeals of all claims submitted by Cigna members or their healthcare providers.

17.     Plaintiffs do not know the true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, and therefore designates those defendants by such fictitious names.  Each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to and proximately cause the injuries suffered by Plaintiffs.  Plaintiffs will amend this Complaint to allege the true names and capacities of these DOES when the same becomes known to Plaintiffs.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### Cigna Policies Providing Out-of-Network Benefits

18.     Cigna markets and sells to the public both insurance policies that limit insureds to healthcare providers who are "in-network" with Cigna (HMO policies), and insurance policies that have the benefit of allowing individuals to obtain their healthcare services at out-of-network healthcare providers (*e.g.*, PPO policies).

19.     Nutrishare is informed and believes that many individuals purchase PPO policies from Cigna so that they are not limited to receiving healthcare service from in-network providers, but rather have the freedom and ability to obtain their healthcare services from out-of-network providers.  Nutrishare is informed and believes that individuals who purchase PPO coverage generally are willing to pay more for these policies because of the value of having the option of obtaining healthcare services from out-of-network providers.

20.     Likewise, Nutrishare is informed and believes that many employers purchase insurance coverage for their employees from Cigna and other insurance companies, or fund coverage for their employees and have Cigna and other companies administer the coverage.  The coverage purchased or funded by these employers typically gives their employees an HMO option, which limits the employee to those providers who are in-network with the insurance company, or a PPO option, which gives the employee the ability of using out-of-network providers.

21.     Plaintiffs are informed and believe that Cigna (and the employers they administer plans for) prefers that patients use in-network providers to receive health care service because Cigna has entered into contracts with these providers and pays these providers at extremely discounted rates, which increases Cigna's profits by huge sums of money.

22.     Plaintiffs are informed and believe that Cigna has received hundreds of millions of dollars in premium or administration payments from its members or employers over the years for health coverage with out-of-network benefits.  Despite this, Cigna has attempted to restrict patients' use of those out-of-network benefits by engaging in a campaign of threats and

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1  harassment against its members who attempt to use their out-of-network benefits, and against

2  those out-of-network providers who provide healthcare services to Cigna members.

3  **Nutrishare Services**

4      23.    Nutrishare is a home infusion provider that specializes exclusively in caring for

5  long-term home TPN consumers.  TPN is a method of providing a sterile form of liquid nutrients

6  into the blood through an intravenous catheter.  It contains nutrients the body would normally get

7  from food, such as protein, carbohydrates, fats, vitamins, minerals, and water.  TPN services are

8  necessary for some patients who have certain conditions, diseases and injuries that can cause

9  problems with the normal process of digestion and absorption which occurs within the

10  gastrointestinal tract.  The stomach or bowel may not be working normally or a person may have

11  had surgery to remove part or all of these organs.  Because TPN is given into the blood, it

12  bypasses the gastrointestinal tract.  TPN is generally used only if other methods to feed into the

13  gastrointestinal tract have failed or are not possible.  When administered properly, people can live

14  very well on TPN for many years.

15      24.    One major complication that can occur when TPN is not administered properly is

16  a central line infection.  Central line infections are extremely serious and can result in deadly

17  blood infections.  Central line infections are especially dangerous for TPN patients because TPN

18  must be administered via central line, but the number of veins that may be used for a central line is

19  finite.  Every time that a person suffers from a central line infection, the vein that was used for that

20  central line becomes unusable for future central lines.  A TPN patient who experiences too many

21  central line infections could, ultimately, end up in a situation without any remaining veins that can

22  be used to administer TPN.  Thus, avoiding central line infections not only is vitally important

23  because it avoids potentially deadly blood infections, but also because it allows the patient to

24  continue to receive life-sustaining nutrition via TPN.  Avoiding problems with TPN administration

25  is literally a matter of life and death.

26      25.    Unlike most providers of TPN services, Nutrishare specializes in providing long-

27  term TPN services.  Nutrishare thus has a unique appreciation of the physical aspects of receiving

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

6

**COMPLAINT**

1  long-term TPN care and takes great care to ensure that its long-term TPN patients have the highest

2  possible quality of life.

3       26.     Nutrishare has been providing TPN services to various Cigna members on a

4  continuous basis since approximately 1994.  Nutrishare does not have a contract with Cigna, and

5  is considered an out-of-network provider.  As an out-of-network provider, Nutrishare has not

6  agreed to comply with, or be bound by, any Cigna insurance contracts, policies or procedures.

7       27.     In order to provide TPN services to Cigna members, Nutrishare's practice is to

8  obtain an assignment of the patient's benefits under his or her Cigna health benefits plan to

9  Nutrishare.

10       28.     When required to do so, Nutrishare has obtained authorizations from Cigna prior

11  to providing TPN services to Cigna members.  These authorizations did not require Nutrishare to

12  attempt to collect coinsurance or co-payments from Cigna's members as a condition of payment.

**TPN Services Provided to Patient One**

13

14       29.     Patient One has health insurance through an Cigna health benefits plan provided

15  by her employer.  Patient One's Cigna plan is a PPO plan that provides coverage to Patient One

16  for healthcare services received both from in-network and out-of-network providers.

17       30.     In 2011, Patient One was diagnosed with idiopathic gastroparesis ("IG").  IG

18  causes partial paralysis of the stomach, which causes food to move either very slowly or not at all

19  through the digestive tract.  This often leads to vomiting, weight loss, and malnutrition.  Patients

20  who suffer from IG often require daily TPN in order to ensure that they consume enough nutrients

21  and calories to survive.  Patient One requires daily TPN to survive, and infuses (i.e. is "hooked

22  up") over 10 hours per day.  Patient One expects to require TPN for the rest of her life.

23       31.     When Patient One first was diagnosed with IG, she was directed by Cigna to an in-

24  network provider for her TPN services.  However, within the first year of requiring daily TPN

25  services from this in-network provider, Patient One suffered from multiple central line infections,

26  received incorrect and incomplete orders of TPN products and supplies, and experienced

27  substantial complications in attempting to fill her orders for TPN products and supplies.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

32.     Due to the complications that Patient One experience with the in-network provider of TPN services, Patient One's physician advised that for her health and safety she should switch to a better provider of TPN, and recommended Nutrishare.

33.     Patient One began receiving TPN services from Nutrishare in February 2012. Patient One has had health insurance coverage through the Cigna PPO plan for the entire time that she has received TPN services from Nutrishare.

34.     Since switching to Nutrishare, Patient One has not suffered from any TPN-related complications, and has received the highest level of care.  Patient One's experience with Nutrishare has shown that Nutrishare provides an unmatched level of care to TPN patients, that Nutrishare is innovative and aware of all of the most recent advances in TPN, and that Nutrishare is extremely conscientious in providing the correct and best care, product, supplies, and support to its TPN patients.

35.     Patient One would be unable to receive the same level of care from an in-network provider of TPN services, and has no desire to switch to any provider other than Nutrishare.

**TPN Services Provided to Patient Two**

36.     Patient Two has health insurance through an Cigna health benefits plan provided by her husband's employer.  Patient Two's Cigna health insurance plan is a PPO plan that provides coverage to Patient Two for healthcare services received both from in-network and out-of-network providers.

37.     Patient Two suffers from two conditions that will require her to be a lifelong user of TPN services: eosinophilic esophagitis ("EE") and mitochondrial cytopathy ("MC").  EE is an inflammatory condition of the esophagus that causes difficulties in swallowing and passing food from the esophagus to the stomach.  Patients who suffer from EE often are unable to eat solid food.  MC is a condition that affects the energy-producing structures of a patient's cells, and can cause various symptoms, including gastrointestinal disorders.  Due to the combination of Patient Two's EE and MC, she is dependent on TPN for nutrition and could not survive without it. Patient Two requires daily TPN to survive, and infuses (*i.e.* is "hooked up") over 12 hours per day.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

38.     When Patient Two first was diagnosed with EE and MC, she was directed by her then-insurance company to an in-network provider for her TPN services.  However, while receiving TPN services from this in-network provider, Patient Two suffered from multiple central line infections requiring hospitalization, received incorrect and incomplete orders of TPN products and supplies, and experienced substantial complications in attempting to fill her orders for TPN products and supplies.  There are no other providers—whether in-network or out-of-network—in Patient Two's geographic area that specialize in long-term TPN services.

39.     Due to these continued complications and fears for her health and safety, Patient Two sought to switch to a better provider of TPN services.  She learned of Nutrishare through other patients who require TPN, and switched to Nutrishare approximately 15 years ago.

40.     Since changing her provider of TPN services to Nutrishare, Patient Two has required substantially less nursing care, has suffered from significantly fewer infections and resulting hospitalizations, and has an increased life expectancy.  Patient Two's experience with Nutrishare has shown that Nutrishare provides an unmatched level of care to TPN patients, that Nutrishare is innovative and aware of all of the most recent advances in TPN, and that Nutrishare is extremely conscientious in providing the correct and best care, product, supplies, and support to its TPN patients.

41.     Beginning in January 2014, Patient Two's health insurance changed to a plan administered by Cigna.  At that time, Patient Two specifically selected a PPO plan so that they could continue to receive TPN services from Nutrishare.  Patient Two does not believe that she would be able to continue living at home if she were forced to receive TPN from any provider other than Nutrishare.

**TPN Services Provided to Patient Three**

42.     Patient Three has health insurance through a Cigna health benefits plan provided by her husband's employer.  She had this plan in 2010 and has had it from 2013 through the present.  Patient Three's Cigna health insurance plan is a PPO plan that provides coverage to Patient Three for healthcare services received both from in-network and out-of-network providers.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

43.     While undergoing surgery for cancer in 1998, Patient Three experienced a surgical complication that cut off the blood supply to her digestive system.  Due to this complication, Patient Three became dependent on TPN for nutrition and could not survive without it.  Patient Three requires daily TPN to survive, and infuses (*i.e.* is "hooked up") over 12 hours per day.

44.     In the immediate aftermath of Patient Three's sudden need for TPN, Patient Three chose to use a local, in-network provider for her TPN services.  However, while receiving TPN services from this in-network provider, Patient Three received incorrect and incomplete orders of TPN products and supplies, and experienced substantial complications in attempting to fill her orders for TPN products and supplies.

45.     Due to these continued complications and fears for her health and safety, Patient Three sought to switch to a better provider of TPN services.  She switched to Nutrishare for her long-term TPN services in the summer of 1999.

46.     Since changing her provider of TPN services to Nutrishare, Patient Three has an increased life expectancy and quality of life.  Patient Three's experience with Nutrishare has shown that Nutrishare provides an unmatched level of care to TPN patients, that Nutrishare is innovative and aware of all of the most recent advances in TPN, and that Nutrishare is extremely conscientious in providing the correct and best care, product, supplies, and support to its TPN patients.

47.     Patient Three does not believe that she would be able to thrive with her condition the way she has been able to as a Nutrishare patient if she were forced to receive TPN from any other provider.  There are no comparable providers of TPN in her geographic area, and no other providers of TPN who match Nutrishare's level of care.

### Nutrishare's Claim Submissions

48.     Nutrishare has submitted a bill for services to Cigna for the services Nutrishare has provided to Cigna's members.  The bill sets forth Nutrishare's charges for such services.  The charges on Nutrishare's bills are the usual charges that it charges all health plans and insurers, and they are reasonable.

49.     After receiving Nutrishare's bills, Cigna calculates an "allowed" amount it will pay for the TPN services.  Nutrishare is not aware how Cigna calculated such "allowed amount," and Cigna has not shared its methodology for calculating such "allowed amount" with Nutrishare. In addition, Cigna has also calculates coinsurance or co-payment amounts.  Prior to this dispute, Cigna did not require Nutrishare to collect such coinsurance or co-payment amounts, and Nutrishare is not party to any contract requiring it or imposing any duty to collect such coinsurance or co-payment amounts, and has no duty to collect such coinsurance or co-payment amounts.

50.     In most cases prior to this dispute, after calculating the allowed amount and the members' coinsurance and copayments, Cigna paid the allowed amount (less any coinsurance and copayments) to Nutrishare.  Nutrishare had no input as to the amounts Cigna paid Nutrishare, and Cigna voluntarily made such payments to Nutrishare.

51.     Prior to this dispute, Cigna never asked Nutrishare whether it attempted to collect coinsurance or copayments from Cigna's members before to making such payments, and did not inform Nutrishare that the payments were somehow conditioned on collection of coinsurance or copayments.

**Cigna's Coercive Actions and Improper Failures to Pay**

52.     Nutrishare has learned that Cigna has conducted a campaign to coerce its members who are longstanding patients of Nutrishare to cease using Nutrishare's TPN services, and to switch to an in-network provider of TPN services, and to stop physicians from recommending Nutrishare in the first place, depriving Cigna members of the PPO benefits for which they have bargained and paid.  This campaign is carried out through Cigna's failures to pay for TPN services provided to Cigna members by Nutrishare—resulting in patients receiving unexpected bills for the unpaid amounts—and through threats and harassment of patients and their physicians.  Plaintiffs are informed and believe that the purpose of Cigna's improper actions is to drive Nutrishare out of business and to gain an improper advantage in this dispute.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

53. For example, Patient One has received multiple telephone calls from Cigna, attempting to coerce her to use in-network providers instead of Nutrishare. Patient One explained to each Cigna representative who contacted her that she had no interest in switching to an in-network provider, that the TPN services she received from Nutrishare were of a much higher quality than what she received from the in-network provider whom she used previously, and that she and her doctor felt that her health and safety would be best protected by remaining in the care of Nutrishare. However, despite these repeated explanations, Cigna has continued to call Patient One to encourage her to change to an in-network provider.

54. Similarly, Patient One's physician has received telephone calls from Cigna, telling the physician that Patient One could receive less costly TPN services from an in-network provider, and encouraging the physician to tell Patient One to switch from Nutrishare to an in-network provider, despite the fact that the level and quality of care that Patient One received at the in-network providers that she previously used was vastly inferior to the level and quality of care she receives from Nutrishare.

55. Patient One has no intention of switching from Nutrishare for her TPN services, but Cigna's repeated telephone calls to both her and her physician have made her feel threatened that she would be required to switch to an in-network provider and that the high quality TPN services on which she depends from Nutrishare may be in jeopardy.

56. Patient Two likewise received a telephone call from Cigna regarding in-network providers of TPN. Patient Two told the Cigna representative that Patient Two has no intention of switching from Nutrishare.

57. In addition to harassing its members and their doctors, Cigna has simply stopped paying Nutrishare for any TPN services provided to Cigna's members. Cigna has told its members who are Nutrishare patients that:

> Cigna has developed information that this medical health care professional/facility has engaged in a practice by which the health care professional/facility did not obligate its patients to pay their full cost share obligation, such as the copayment, deductible and/or coinsurance, or did not bill its patients for the same. When this occurs, Cigna cannot reasonably rely upon any bills submitted by this health care professional/facility as proof of actual charges until Cigna has received some proof otherwise.

58.   In addition, Plaintiffs are informed and believe that Cigna has used this rationale to justify its non-payment of claims even where members do not have any outstanding coinsurance or copayment requirements to meet.  There is absolutely no excuse for Cigna's failure to pay for the claims of these patients.  Yet, Cigna members who receive TPN services from Nutrishare now are being faced with personal liability for all of the charges due to Cigna's failure to pay.

59.   Moreover, since around the time this dispute arose, Nutrishare—while fully reserving its rights—has billed all Cigna patients for their coinsurance and copayments (as determined by Cigna), and has collected some of these amounts, in whole or in part.  Yet, Cigna has continued to deny payment for and/or underpay the claims of these patients.  There should be no dispute that Nutrishare is owed for the claims of patients whom it has billed for coinsurance and copayments as prescribed by Cigna, and Cigna has no reason whatsoever to deny and/or underpay any payment on these claims, yet has continued to refuse payment.

60.   For certain patients, Nutrishare was not informed by Cigna of the amount of coinsurance and/or copayments due from the patients until after the time when Nutrishare submitted its bills to Cigna.  Accordingly, these patients were not billed by Nutrishare prior to submission of the claims to Cigna.  However, once Cigna indicated, via its explanation of benefits ("EOB") form for each claim, the amount due from these patients, Nutrishare billed these patients for the amounts indicated by Cigna.

61.   Nutrishare has appealed Cigna's improper denials and underpayments.  However, Cigna has systematically denied every appeal submitted by Nutrishare.  For example, in one letter from Cigna, Cigna upheld its denial of payment to Nutrishare on the basis that "services were not rendered as billed," because the patient's plan excluded "[c]harges for which you are not obligated to pay or for which you are not billed or would not have been billed except that you were covered under this Agreement."

62.   Cigna has denied claims for TPN services provided to its members regardless of whether Nutrishare has attempted to collect coinsurance or copayments from the patients or not.  Likewise, Cigna has issued the same appeal denial letters regardless of whether Nutrishare

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

attempted to collect the patient coinsurance or copayments or not.  Cigna's purported rationale for denial of the claims submitted by Nutrishare thus bears no relation to the actions of Nutrishare or the patients or to Nutrishare's claim submissions.

63.     The outstanding amount due to Nutrishare on these claims currently totals approximately $1,000,000, plus interest at the applicable rate.  This amount will increase as Cigna continues to fail to pay, or underpays, claims for services Nutrishare provides to Cigna's members.

64.     Cigna likewise has denied payment of claims for TPN services provided to Patient One, Patient Two, and Patient Three, despite the fact that Nutrishare has collected coinsurance or copayments from Patient One and Patient Three, and that Nutrishare never has been informed by Cigna of the amount of coinsurance or copayment to collect from Patient Two.  The total amounts that Cigna has failed to pay for TPN services provided by Nutrishare to Patients One, Two, and Three are $156,888.42, $48,159.56, and $447,707.45, respectively.  Due to Cigna's improper failure to pay for these covered healthcare services, Patients One, Two, and Three are personally financially liable for the amounts unpaid by Cigna.

65.     The goal of Cigna's harassment and failures to pay are clear:  Cigna wants to save money by coercing its patients into using only in-network providers, despite the fact that these members pay for PPO plans that permit full access to out-of-network providers and that these patients do not want to switch to a different, inferior provider of TPN services.  One of Cigna's tactics for achieving this goal is to make providing services to Cigna members so unattractive to Nutrishare—because those services will not be paid for—that Nutrishare will have no choice but to turn away Cigna patients in the future.

66.     Nutrishare is well-known and respected as the premier provider of TPN services, and denying Cigna's PPO members access to the best available care for which they have paid is entirely unjustified.

67.     Cigna's actions seriously interfere with the healthcare needs of these patients.  As Cigna is aware, patients who require TPN services will continue to need those life-sustaining services for the rest of their lives.  The patients who have received threatening telephone calls

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1   from Cigna are being led to believe that, if they want to ensure that their medically-necessary

2   healthcare services are paid for the rest of their lives, then they must switch to in-network

3   providers.

4          68.     Nutrishare cannot continue providing TPN services to out-of-network patients

5   perpetually without being paid by Cigna.  Thus, if Cigna does not reverse course, or if this Court

6   does not compel that reversal, these patients will lose the relationships that they have formed with

7   their current Nutrishare TPN providers and their continuity of care will be disrupted.  It they are

8   forced to switch to in-network providers, many will find that there is no TPN provider of the same

9   quality in the same area, or sometimes no other long-term TPN provider at all.

10         69.     The totality of Cigna's actions strongly indicate an improper scheme to cause

11  Cigna members to terminate their established Nutrishare relationships, and to induce patients and

12  their employers to become and remain Cigna members with the promise of full access to out-of-

13  network providers, when in reality Cigna intends to actively coerce them from using these out-of-

14  network benefits.  These actions are being pursued for the purpose of gaining an advantage in this

15  dispute and to inflict maximum damage on Nutrishare.  The end result is that Cigna's members are

16  denied payment for the life-sustaining services for which they have bargained and paid, that

17  Nutrishare may be driven out of business, and that Cigna will profit on the backs of all involved.

**FIRST CLAIM FOR RELIEF**

**Enforcement Under 29 U.S.C. § 1132(a)(1)(B) For Failure To Pay ERISA Plan Benefits**

**(On behalf of all Plaintiffs)**

21         70.     The allegations of the prior paragraphs of this Complaint are incorporated by this

22  reference as though fully set forth herein.

23         71.     Nutrishare asserts this claim for relief as assignee of its patients' benefits under

24  their Cigna health benefits plans, which are governed by ERISA.  This is a claim to recover

25  benefits, enforce rights, and clarify rights to benefits under 29 U.S.C. § 1132(a)(1)(B).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

72.     In the alternative, should Nutrishare's assignments for any reason fail, the Patients allege this claim for relief in their individual capacities in connection with claims for healthcare services covered by health benefits plan governed by ERISA.

73.     Plaintiffs have performed all the terms and conditions required of them under the terms of their ERISA plans, except as excused or prevented by the acts and conduct of Cigna.

74.     ERISA actions under 29 U.S.C. § 1132(a)(1)(B) may be brought not only against plans, plan fiduciaries, and plan administrators, but also against any individual or entity that effectively controls the decision whether to honor or to deny a claim.  *See Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1206-07 (9th Cir. 2011) ("potential defendants in actions brought under § 1132(a)(1)(B) should not be limited to plans and plan administrators . . . [, and] parties other than plans can be sued for money damages under . . . § 1132(a)(1)(B), as long as that party's individual liability is established.").  Plaintiffs are informed and believe that Cigna is a proper defendant under this definition.

75.     Plaintiffs are informed and believe that as claims administrator, Cigna made benefits decisions and decided benefit appeals for the ERISA plans.  In intentionally withholding payment for health care services provided to Patient One  and Patient Two and Cigna "effectively controlled the decision whether to honor or to deny a claim...."  *Cyr*, 642 F.3d at 1204.

76.     Cigna's members, including the Patients, paid premiums to Cigna in return for health care coverage that included coverage for pre-approved health care services provided by out-of-network providers.  At the time the services in question were provided the Patients were members and insureds of Cigna.

77.     Cigna breached the ERISA plans' benefits provisions by improperly underpricing and/or underpaying Nutrishare for the out-of-network TPN services provided by Nutrishare to the Patients.  The breaches also included, among other things, interpreting and implementing the ERISA plan terms in a way that systematically was arbitrary and capricious, and fabricating improper rationales for denial.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

78.   Plaintiffs have exhausted all administrative remedies available to them. Nutrishare, on behalf of the Patients and other Cigna members, appealed every adverse claim determination made by Cigna.  However, these efforts have not resulted in proper payment from Cigna, and Cigna has continued to deny appeals even where Nutrishare has attempted to collect patient coinsurance or copayments.  As alleged above, Cigna's continuous course of conduct was intended to withhold payment for health care services provided to the Patients and other Cigna members by Nutrishare.  Given that Cigna is demonstrably determined not to pay benefits, no matter what actions are taken by Plaintiffs, additional appeals would have been futile.

79.   Cigna failed to process the claims of Plaintiffs in a manner consistent or substantially in compliance with the ERISA regulations.  These failures deprived Plaintiffs of the information and due process necessary to effectively appeal Cigna's arbitrary denials.  But just as importantly, because of these failures, the obligation of Plaintiffs to pursue further administrative remedies is "deemed exhausted" under the ERISA regulations at 29 C.F.R. § 2560.503-1.

80.   By reason of the foregoing, Plaintiffs are entitled to past due benefits, future benefits, declaratory relief, prejudgment interest, and attorneys' fees.  The Court should specifically order Cigna:

a.   to immediately and timely process the claims of Plaintiffs for past due benefits in accordance with ERISA, and to cease withholding payment on pretextual grounds; and

b.   to properly pay the claims of Plaintiffs for future health care services received from the Nutrishare at the usual and customary rate.

81.   As a direct and proximate result of Cigna's violations of ERISA regulations, Cigna has failed to pay the benefits owing to Nutrishare of over $1,000,000, and owing to Patient One, Patient Two, and Patient Three in the amount of more than $652,755.43, which will continue to grow as the Patients and other Cigna members continue to receive TPN services from Nutrishare.  In the absence of any payments by Cigna, the Patients and other Cigna members are personally financially liable for the amounts that should have been paid by Cigna under the terms of Cigna's health benefit plans.

1159487.5

**FIRSTSECOND CLAIM FOR RELIEF**

**Enforcement Under 29 U.S.C. § 1132(a)(2) For Breach of Fiduciary Duty**

**(On behalf of all Plaintiffs)**

82.     The allegations of the prior paragraphs of this Complaint are incorporated by this reference as though fully set forth herein.

83.     Plaintiffs do not believe that Cigna is a fiduciary of the ERISA plans for which it is a claims administrator.  However, should this Court find that Cigna is a fiduciary, this cause of action is alleged by Plaintiffs on behalf of all ERISA plan members who received out-of-network services from Plaintiffs, and on behalf of the ERISA plans themselves.  This is a claim pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes ERISA beneficiaries to bring a suit for appropriate relief under 29 U.S.C. § 1109.  Section 29 U.S.C. § 1109 provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

84.     To the extent necessary, Nutrishare has standing to pursue this claim as assignee of the members' benefits under the ERISA plans.  As the assignee of benefits under the ERISA Plans, Nutrishare steps into the shoes of the "beneficiary" and are also the "Plaintiffs" for purposes of the ERISA statute and regulations.  To the extent that those assignments do not apply, for any reason, Patients One, Two, and Three have standing to pursue this claim in their individual capacities.

85.     Cigna served as a fiduciary for the ERISA plans at issue.  As fiduciary, Cigna owed the ERISA Plans and the plan members and beneficiaries duties to act with undivided loyalty and prudence in the administration of the plans and to act "solely in the interests of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).

86.     Cigna breached its fiduciary duties through the willful and systematic conversion of the assets of each of the ERISA plans.  After Cigna failed to pay the amounts that were due to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

18

1159487.5

participants and beneficiaries who were patients of Nutrishare, this money became the "assets" of the plans, as that term is defined under 29 U.S.C. § 1106.  Cigna thus converted these assets by failing to disburse them as required by the terms of the plans, to the detriment of the plans themselves.  Cigna also violated its fiduciary duty by conversion of Plan assets in obtaining illegal commissions from the Plan.

87.     Cigna breached its fiduciary duties by (a) failing to properly determine Plan benefits and fairly administer beneficiaries' benefit claims, and (b) improperly delegating Plan administrative duties, and failing to properly supervise to ensure compliance with Plan provisions and ERISA requirements.

88.     Cigna willfully and systematically breached its fiduciary duties of loyalty and prudence by failing to disburse benefits rightfully payable to plan participants and beneficiaries. Cigna further breached those fiduciary duties by creating improper and spurious reasons and excuses for beneficiaries to obtain their Plan benefits.

89.     Cigna also breached its duty to process the claims of Plaintiffs for benefits diligently and in good faith.

90.     Cigna further breached its fiduciary duty of care by misrepresenting through its authorizations that the procedures would be covered services when in fact they would ultimately be denied payment.  Similarly, to the extent Cigna represented to Plaintiffs that it would pay Nutrishare's usual and customary fees and subsequently did not, it has violated its fiduciary duties for which equitable relief is requested.

91.     By knowingly applying inappropriate criteria in order to improperly deny benefits for TPN services provided to ERISA plan participants and beneficiaries, in violation of the terms of the plan documents, for the benefit of Cigna, Cigna violated its fiduciary duties set forth in 29 U.S.C. §§ 1105(a)(1), (a)(2) and (a)(3).

92.     In light of Cigna's systematic and willful violations of their fiduciary duties to plan beneficiaries and participants, Nutrishare, as assignee of the members' benefits, on behalf of the members of the ERISA Plans, and on behalf of the ERISA Plans themselves, and the Patients'

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   in their individual capacities, seek an injunction to remove Cigna from acting as the Plan

2   Administrator and/or Claims Administrator for each of the ERISA plans at issue; and/or, to

3   compel Cigna to honor the terms of the plans, and to cease committing willful and systematic

4   breaches of its fiduciary duties.

### THIRD CLAIM FOR RELIEF

**Violation of California Business & Professions Code §§ 17200 et seq.**

**(On behalf of Nutrishare)**

8   93.     The allegations of the prior paragraphs of this Complaint are incorporated by this

9   reference as though fully set forth herein.

10   94.     Cigna has engaged in unfair and/or unlawful business acts and practices by, *inter*

11   *alia*:

12          a.     using arbitrary, capricious and improper methods to improperly deny and/or

13   underprice Nutrishare's claims for TPN services provided to Cigna members;

14          b.     making false and/or misleading statements in EOBs, appeal response letters

15   and other correspondence or materials concerning the reasons for denials and/or underpayments of

16   Nutrishare's claims;

17          c.     concealing and/or omitting material information in EOBs, appeal responses,

18   and other correspondence or materials concerning the reasons for denials and/or underpayments of

19   Nutrishare's claims;

20          d.     inducing Nutrishare to provide TPN services to Cigna members on the basis

21   of representations meant to lead Nutrishare to believe that Cigna would pay for the services at a

22   usual, customary, and reasonable rate, when in fact Cigna intended either to significantly underpay

23   and/or deny Nutrishare's claims;

24          e.     unduly obstructing meaningful appeals of benefit determinations;

25          f.     for those claims that are governed by the California Insurance Code, failing

26   to comply with California Insurance Code § 796.04 by effectively rescinding and/or modifying

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1 authorizations for treatment by denying payment for TPN services provided by Nutrishare to

2 Cigna members in good faith and pursuant to authorizations received from Cigna;

3         g.      systematically shifting liability to the members for a greater portion of the

4 services and a greater level of out-of-pocket costs than the members would bear if Nutrishare's

5 services were appropriately reimbursed.

6       95.     This conduct by Cigna constitutes unfair and/or unlawful business practices under

7 California Business and Professions Code § 17200, *et seq.*  As a result of their acts of unfair

8 competition, Cigna continues to receive and retain monies that rightfully belong to Nutrishare as

9 compensation for rendering covered, medically necessary services to Cigna members.

10       96.     As a result of Cigna's acts of unfair competition, and as described herein,

11 Nutrishare has suffered injury in fact and has lost money or property in that, *inter alia*, Nutrishare

12 has been denied payment of amounts that are due to it for out-of-network TPN services.  In

13 addition, Cigna has acquired and/or retained such amounts by means of Cigna's acts of unfair

14 competition, and such unfair competition is likely to continue absent judicial intervention.  This

15 conduct threatens not only the economic wellbeing and future viability of Nutrishare and its

16 patients who are Cigna members, but the health of the public.

17       97.     California Business and Professions Code § 17203 provides that any court of

18 competent jurisdiction may enjoin any person from engaging in unfair competition and restore to

19 any person who is a victim of that unfair competition any money or property acquired thereby.

20 Nutrishare seeks restitution of an amount to be proved at trial, currently estimated as

21 approximately $1,000,000, plus applicable statutory interest, which is the amount that Cigna is

22 obligated to pay Nutrishare for the TPN services Nutrishare provided to plan members and that

23 Cigna either underpaid or failed to pay entirely.  Nutrishare also seeks an injunction prohibiting

24 Cigna's ongoing conduct in improperly reducing, denying, and/or delaying payment to Nutrishare

25 for TPN services provided to Cigna members.  Furthermore, the injunction should force Cigna to

26 cease and desist from its misrepresentations, misleading statements, material omissions, and

27 concealments in its EOBs, appeal responses, claim status reports and other communications, and

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   from unduly obstructing Nutrishare's ability to obtain a meaningful appeal of Cigna's benefit

2   determinations.

3   98.      Nutrishare's legal remedies are inadequate in that the Cigna's unfair and unlawful

4   conduct is ongoing, and repeated litigation to correct its ongoing actions is inefficient for the

5   parties and the Court.

**FOURTH CLAIM FOR RELIEF**

**Breach of Implied Contract**

**(On behalf of Nutrishare)**

9   99.      The allegations of the prior paragraphs of this Complaint are incorporated by this

10   reference as though fully set forth herein.

11   100.     Plaintiffs are informed and believe that Cigna members pay premiums to Cigna in

12   return for health care coverage that includes coverage for the services provided by Nutrishare.  In

13   providing services and care to Cigna members, Nutrishare intended to and has conferred a benefit

14   on Cigna, by fulfilling Cigna's duties to its members.  Nutrishare further provided such services

15   with the reasonable expectation of payment from Cigna.

16   101.     When required to do so, Nutrishare has obtained authorizations from Cigna prior

17   to providing TPN services to Cigna members.  These authorizations did not require Nutrishare to

18   attempt to collect coinsurance or co-payments from Cigna's members as a condition of payment.

19   102.     Nutrishare provided in good faith TPN services to Cigna members and insureds.

20   Nutrishare's services were medically necessary to prevent serious bodily harm to or suffering by

21   Cigna members.  Cigna was obligated to pay for all of the TPN services provided to Cigna

22   members by Nutrishare.

23   103.     Nutrishare has performed all obligations owed to Cigna except those Nutrishare

24   was prevented or excused from performing by the acts or omissions of Cigna.  Nutrishare was

25   under no obligation to collect co-payments or other amounts from Cigna members as a condition

26   of payment from Cigna.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1159487.5

104.     Cigna breached the parties' implied-in-fact agreement by failing to pay Nutrishare for the services provided to Cigna members.

105.     As a direct and proximate result of Cigna's breaches, Nutrishare has been damaged in an amount to be proven at trial, but in no event less than $1,000,000, plus applicable interest.

### FIFTH CLAIM FOR RELIEF

### Services Rendered

### (On behalf of Nutrishare)

106.     The allegations of the prior paragraphs of this Complaint are incorporated by this reference as though fully set forth herein.

107.     Cigna is liable to pay Nutrishare's claims and the costs incurred for services provided to Cigna members under a common count for services rendered.

108.     Nutrishare provided TPN services to Cigna members and billed Cigna for the resulting claims.

109.     Nutrishare performed all services conscientiously and with the intent to charge its customary rates.  Nutrishare has performed all obligations owed to Cigna except those Nutrishare was prevented or excused from performing by the acts or omissions of Cigna.  Nutrishare was under no obligation to collect co-payments or other amounts from Cigna members as a condition of payment from Cigna.

110.     As a direct and proximate result of Cigna's failure to pay for the TPN services Nutrishare rendered to Cigna members, Nutrishare has been damaged an amount to be proven at trial, but in no event less $1,000,000, plus applicable interest.

### SIXTH CLAIM FOR RELIEF

### Breach of Covenant of Good Faith and Fair Dealing

### (On behalf of the Patients)

111.     The allegations of the prior paragraphs of this Complaint are incorporated by this reference as though fully set forth herein.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

112.     Implied in every insurance agreement is a duty that each of the parties will deal with each other fairly and in good faith.  Plaintiffs are informed and believe that Cigna breached the covenant of good faith and fair dealing by, among other things:

a.     failing and refusing to pay the claims of the Patients for TPN services provided by Nutrishare, despite the fact that Nutrishare has collected coinsurance and copayments from many Cigna members, including Patient One and Patient Three, and that Nutrishare never has been informed by Cigna of the amount of coinsurance or copayment to collect from other patients, including Patient Two.

b.     failing and refusing to pay the claims in accordance with the terms and conditions of the Patients' health benefit plans, even where Nutrishare has collected  co-payments and/or otherwise complied with all terms required by Cigna for payment;

c.     failing and refusing to acknowledge that the claims were subject to an implied contract with Nutrishare;

d.     modifying and/or rescinding authorizations for TPN services provided by Nutrishare to the Patients in good faith;

e.     fabricating false reasons for its failure to pay for TPN services provided to the Patients; and

f.     attempting to coerce patients and physicians to use or recommend in-network providers.

113.     The effect of these breaches of the covenants of good faith was to interfere with and deprive the Patients of the benefits owing under their Cigna health benefit plans.  The Patients specifically pay for PPO plans from Cigna so that they have access to out-of-network providers, including Nutrishare.  The Patients have every right to receive TPN services from Cigna under the terms of their Cigna health benefit plans, and to have those services received from Nutrishare paid by Cigna and the usual, reasonable, and customary rate.

114.     Due to Cigna's failure to pay for TPN services provided to the Patients by Nutrishare, the Patients are personally financially liable for all amounts unpaid by Cigna.  The

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1159487.5

1   Patients cannot afford to continue to pay such charges, and should not be forced to do so, but

2   Cigna's failure to pay forces the Patients to continue to incur charges for TPN services that remain

3   unpaid by Cigna.

4        115.    As a result of these breaches of the covenant of good faith by Cigna, the Patients

5   have been damaged in an amount to be proven at trial, but in no event less than $652,755, plus

6   applicable interest, and which amount will continue to grow as the Patients continue to receive

7   TPN services from Nutrishare.

8        116.    As an insurance company, Cigna is in a position of power with respect to its

9   insureds, and this "special relationship" requires the utmost good faith from Cigna in its dealings

10  with insureds, including Patients One, Two, and Three.  *See Gruenberg v. Aetna Ins. Co.* (1973) 9

11  Cal.3d 566, 578.

12       117.    Plaintiffs are informed and believe that Cigna committed these breaches of the

13  implied covenant and acted in bad faith.  Cigna's actions exhibit malice, oppression, and a willful

14  and conscious disregard of the rights of the Patients by depriving the patients of the benefits for

15  which they have paid, including access to out-of-network providers like Nutrishare in order to

16  enhance Cigna's profits by refusing to pay for out-of-network care.  The result is that the Patients'

17  safety, quality of life, and survival are being placed in serious jeopardy due to Cigna's placement

18  of its own profit interests above those of its members.

19       118.    Cigna's breaches have necessitated the expense of this litigation to compel Cigna

20  to pay benefits owing to the Patients under their Cigna health benefit plans.  As such, Patients

21  One, Two, and Three's costs and attorneys' fees constitute an economic loss proximately caused

22  by Cigna's breaches of the covenant of good faith and fair dealing, for which Cigna legally is

23  obligated to pay.  *See Brandt v. Superior Court (1995) 37 Cal.3d 813, 817* (attorneys' fees

24  recoverable where insurer breached covenant of good faith and fair dealing).

25       119.    In addition, Cigna's breaches caused severe emotional distress to the Patients as

26  they fear for their health and safety should they be unable to receive TPN services from

27  Nutrishare.  As described above, there is no comparable provider of TPN services and the

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1  Patients' health and livelihood will be in serious jeopardy if they are forced to receive TPN

2  services from in-network providers.  *See Jordan v. Allstate Ins. Co.* (2007) 148 Cal. App. 4th

3  1062, 1079 (permitting recovery of damages for emotional distress in case of bad faith denial of

4  policy benefits).

5         120.     Accordingly, Patients One, Two, and Three are entitled to recover exemplary and

6  punitive damages, in an amount according to proof at trial, in order to punish and to make an

7  example of Cigna, and to deter such conduct in the future.  *See Silberg v. California Life Ins. Co.*

8  (1974) 11 Cal.3d  452, 462.

9                      **SEVENTH CLAIM FOR RELIEF**
                **Intentional Interference With Prospective Economic Advantage**

10                               **(On behalf of Nutrishare)**

11

12        121.     The allegations of the prior paragraphs of this Complaint are incorporated by this

13  reference as though fully set forth herein.

14        122.     A prospective economic relationship exists between Nutrishare and Cigna

15  members, which contains the probability of future economic benefits to Nutrishare that have not

16  and/or will not been realized due to Cigna's misconduct.

17        123.     Cigna at all relevant times knew of the existence of the prospective economic

18  relationship between Nutrishare and patients enrolled in Cigna health plans.  Indeed, Plaintiffs are

19  informed and believe that the reason why Cigna has refused to pay for Nutrishare's services and

20  threatened and harassed patients and their physicians is to reduce the number of Cigna members

21  using Nutrishare's out-of-network TPN services.

22        124.     Cigna has actively been attempting to coerce its members who are longstanding

23  patients of Nutrishare to cease using Nutrishare's TPN services and to switch to in-network

24  providers of TPN services.  This campaign is carried out through Cigna's failures to pay for TPN

25  services provided to Cigna members by Nutrishare—resulting in patients receiving unexpected

26  bills for the unpaid amounts—and through threats and harassment of the patients and their

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1  physicians.  Plaintiffs are informed and believes that the purpose of Cigna's improper actions is to

2  drive Nutrishare out of business and to gain an improper advantage in this Action.

3      125.    Cigna's misconduct alleged above is independently wrongful.   It violates several

4  statues and regulations, and constitutes a breach of contract and fiduciary duties, as set forth

5  above.

6      126.    Cigna's interference has damaged Nutrishare by (a) confusing actual and potential

7  patients who want to use Nutrishare's TPN services; (b) diverting away potential patients enrolled

8  as members in Cigna's insurance products with coverage for out-of-network providers; (c)

9  threatening and/or harassing physicians who would otherwise recommend patients to Nutrishare;

10  and (d) refusing to pay for TPN services actually rendered by Nutrishare to Cigna members with

11  out-of-network coverage.

12      127.    The foregoing conduct of Cigna is the result of willful and malicious or

13  intentionally deceptive conduct, or conduct that manifests a knowing and reckless indifference

14  toward, and disregard of, the rights of Nutrishare.  As a result, Cigna members are not being

15  referred to Nutrishare, and Cigna members who otherwise would have gone to Nutrishare are not

16  being authorized for medically necessary care that is otherwise covered by their Cigna health

17  insurance.  Furthermore, Plaintiffs are informed and believe that current Nutrishare patents are

18  being actively discouraged from continuing to use Nutrishare for TPN services.  As a result,

19  Nutrishare is losing both current TPN patients who cannot afford to pay for out-of-network

20  services that Cigna refuses to pay, as well as future TPN patients who are not being referred to

21  Nutrishare due to Cigna's threats and harassment.

22      128.    Cigna's wrongful acts were designed to interfere with Nutrishare's prospective

23  economic relationships with patients, and Cigna engaged in these wrongful acts knowing that the

24  interference was certain or substantially certain to occur as a result of its actions.

25      129.    Cigna's conduct has actually disrupted Nutrishare's relationships with patients

26  who are Cigna members.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1159487.5

130.    Cigna's conduct has in fact proximately caused damages to Nutrishare in an amount to be proved at trial.

131.    Nutrishare also seeks an injunction prohibiting Cigna's ongoing conduct in interfering with Nutrishare's prospective economic advantage.  Nutrishare's legal remedies are inadequate in that Cigna's conduct is ongoing and will continue to injure Nutrishare, including its reputation and business good will in the community.  Repeated litigation to correct this injury is inefficient for the parties and the Court.

132.    The foregoing conduct of Cigna is the result of willful and malicious or intentionally deceptive conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of Nutrishare.  Cigna knows that its members enrolled in plans with out-of-network benefits have the right to seek care at out-of-network facilities.   Nonetheless, Cigna acted in conscious disregard of the rights of Nutrishare and Cigna members with out-of-network benefits. Nutrishare therefore is entitled to punitive damages.

## EIGHTH CLAIM FOR RELIEF

### Negligent Interference With Prospective Economic Advantage

### (On behalf of Nutrishare)

133.    The allegations of the prior paragraphs of this Complaint are incorporated by this reference as though fully set forth herein.

134.    A prospective economic relationship exists between Nutrishare and Cigna members, which contains the probability of future economic benefits to Nutrishare that have not and/or will not been realized due to Cigna's misconduct.

135.    Cigna at all relevant times knew of the existence of the prospective economic relationship between Nutrishare and patients enrolled in Cigna health plans.  Indeed, Plaintiffs are informed and believe that the reason why Cigna has refused to pay for Nutrishare's services and threatened and harassed patients and their physicians is to reduce the number of Cigna members using Nutrishare's out-of-network TPN services.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1159487.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

136.     Cigna has actively been attempting to coerce its members who are longstanding patients of Nutrishare to cease using Nutrishare's TPN services and to switch to in-network providers of TPN services.  This campaign is carried out through Cigna's failures to pay for TPN services provided to Cigna members by Nutrishare—resulting in patients receiving unexpected bills for the unpaid amounts—and through threats and harassment of the patients and their physicians.  Plaintiffs are informed and believes that the purpose of Cigna's improper actions is to drive Nutrishare out of business and to gain an improper advantage in this Action.

137.     Cigna's misconduct alleged above is independently wrongful.   It violates several statues and regulations set forth above.

138.     Cigna's interference has damaged Nutrishare by (a) confusing actual and potential patients who want to use Nutrishare's TPN services; (b) diverting away potential patients enrolled as members in Cigna's insurance products with coverage for out-of-network facilities; (c) threatening and/or harassing physicians who would otherwise refer patients to Nutrishare; and (d) refusing to pay for TPN services actually rendered by Nutrishare to Cigna members with out-of-network coverage.

139.     Cigna failed to exercise due care when it improperly failed to pay for TPN services provided by Nutrishare to Cigna members and when it made threatening and/or harassing contact with Cigna members and their physicians encouraging them to use in-network providers for TPN services.  As a result, Cigna members are not being referred to Nutrishare, and Cigna members who otherwise would have gone to Nutrishare are not being authorized for medically necessary care that is otherwise covered by their Cigna health insurance.  Furthermore, Plaintiffs are informed and believe that current Nutrishare patents are being actively discouraged from continuing to use Nutrishare for TPN services.  As a result, Nutrishare is losing both current TPN patients who cannot afford to pay for out-of-network services that Cigna refuses to pay, as well as future TPN patients who are not being referred to Nutrishare due to Cigna's threats and harassment.

1159487.5

140.    It was reasonably foreseeable that Cigna's wrongful acts would interfere with Nutrishare's prospective economic relationships with patients, and Cigna's engagement in these wrongful acts was negligent.  Cigna knew or should have known that the interference was certain or substantially certain to occur as a result of its actions, but nonetheless failed to exercise reasonable care to avoid such disruption.

141.    Cigna's conduct has actually disrupted Nutrishare's relationships with patients who are Cigna members.

142.    Cigna's conduct has in fact proximately caused damages to Nutrishare in amounts to be proved at trial.

143.    Nutrishare also seeks an injunction prohibiting Cigna's ongoing conduct in interfering with Nutrishare's prospective economic advantage.  Nutrishare's legal remedies are inadequate in that Cigna's conduct is ongoing and will continue to injure Nutrishare, including its reputation and business good will in the community.  Repeated litigation to correct this injury is inefficient for the parties and the Court.

**WHEREFORE**, Plaintiffs pray for and demands judgment against the Cigna as set forth above and as follows:

1.    Under 29 U.S.C. § 1132(a)(1)(B), past due benefits, future benefits, declaratory relief, prejudgment interest, and attorneys' fees.  Specifically, the Court should or specifically order Cigna:

    a.    to immediately and timely process the claims of Plaintiffs for past due benefits in accordance with ERISA, and to cease withholding payment on pretextual grounds; and

    b.    to properly pay the claims of Plaintiffs for past and future health care services received from the Nutrishare at the usual and customary rate.

2.    Under 29 U.S.C. § 1132(a)(2), an injunction to remove Cigna from acting as the Plan Administrator and/or Claims Administrator for each of the ERISA plans at issue; and/or,  to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1  compel Cigna to honor the terms of the plans, and to cease committing willful and systematic

2  breaches of its fiduciary duties.

3  　　　　3.　　　Restitution to Nutrishare of an amount to be proved at trial, currently estimated as

4  approximately $1,000,000, plus applicable statutory interest, which is the amount that Cigna is

5  obligated to pay Nutrishare for the TPN services Nutrishare provided to plan members and that

6  Cigna either underpaid or failed to pay entirely.

7  　　　　4.　　　Damages to Nutrishare of an amount to be proved at trial, currently estimated as

8  approximately $1,000,000, plus applicable statutory interest, which is the amount that Cigna is

9  obligated to pay Nutrishare for the TPN services Nutrishare provided to plan members and that

10  Cigna either underpaid or failed to pay entirely.

11  　　　　5.　　　An injunction prohibiting Cigna's ongoing conduct in improperly reducing,

12  denying, and/or delaying payment to Nutrishare for TPN services provided to Cigna members and

13  ordering Cigna to cease and desist from its misrepresentations, misleading statements, material

14  omissions, and concealments in its EOBs, appeal responses, claim status reports and other

15  communications, and from unduly obstructing Nutrishare's ability to obtain a meaningful appeal

16  of Cigna's benefit determinations.

17  　　　　6.　　　Patient One, Two, and Three's costs and attorneys' fees in bringing this lawsuit as

18  proximately caused by Cigna's breaches of the covenant of good faith and fair dealing.

19  　　　　7.　　　As proximately caused by Cigna's bad faith and breaches of the covenant of good

20  faith and fair dealing, punitive and exemplary damages to Patients One, Two, and Three in an

21  amount according to proof at trial.

22  　　　　8.　　　An injunction prohibiting Cigna's ongoing conduct in interfering with

23  Nutrishare's prospective economic advantage.

24  　　　　9.　　　As proximately caused by Cigna's conscious disregard of Nutrishare's prospective

25  economic advantage, punitive and exemplary damages to Nutrishare in an amount according to

26  proof at trial.

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5

1

2　DATED:  February 11, 2015　　　　　HOOPER, LUNDY & BOOKMAN, P.C.

3

4　　　　　　　　　　　　　　　　　　By: _____/s/_____

5　　　　　　　　　　　　　　　　　　　　　KATHERINE M. DRU
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs NUTRISHARE, INC.,
6　　　　　　　　　　　　　　　　　　PATIENT ONE, PATIENT TWO, and PATIENT
　　　　　　　　　　　　　　　　　　THREE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1159487.5

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1

## <u>DEMAND FOR JURY TRIAL</u>

2          Plaintiffs request a trial by jury.

3

4

5     DATED:  February 11, 2015          HOOPER, LUNDY & BOOKMAN, P.C.

6

7                                        By: _____/s/*Katherine M. Dru*_____

8                                             KATHERINE M. DRU
                                         Attorneys for Plaintiffs NUTRISHARE, INC.,
9                                        PATIENT ONE, PATIENT TWO, and PATIENT
                                         THREE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1159487.5