1

2

3

4

5

6

7

8

9                      UNITED STATES DISTRICT COURT

10                     EASTERN DISTRICT OF CALIFORNIA

11

12   NUTRISHARE, INC., a              No.  2:15-cv-00351-JAM-AC
     California corporation;
13   PATIENT ONE, an individual;
     PATIENT TWO, an individual;
14   PATIENT THREE, an individual,    **ORDER GRANTING DEFENDANTS'**
                                      **MOTION TO DISMISS**
15              Plaintiffs,

16        v.

17   CONNECTICUT GENERAL LIFE
     INSURANCE COMPANY, a
18   Connecticut corporation;
     CIGNA HEALTH AND LIFE
19   INSURANCE COMPANY, a
     Connecticut corporation; and
20   DOES 1 through 10, inclusive,

21              Defendants.

22

23        Defendants Connecticut General Life Insurance Company and

24   Cigna Health and Life Insurance Company (collectively "CIGNA")

25   move to dismiss (Doc. #8) Plaintiffs Patient One, Patient Two,

26   Patient Three (three unnamed Plaintiffs collectively "the

27   Patients") and Nutrishare, Inc.'s ("Nutrishare") (with the

28

                                    1

1  Patients, collectively "Plaintiffs") Complaint (Doc. #1).[1]

2

3        I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

4        Nutrishare is a healthcare provider specializing in Total

5  Parenteral Nutrition ("TPN") services.  CIGNA sells healthcare

6  plans to consumers.  The Patients each have Preferred Provider

7  Organization ("PPO") plans with CIGNA and have received services

8  from Nutrishare.

9        Nutrishare has provided services to CIGNA members since

10  1994, but does not have a contract with CIGNA and is considered

11  an out-of-network provider.  Nutrishare's practice is to obtain

12  an assignment of the patients' benefits under their health

13  benefits plan with CIGNA.

14        Plaintiffs allege that Nutrishare has submitted a bill to

15  CIGNA for the services provided to CIGNA members, setting forth

16  the charges incurred.  CIGNA has refused to pay for the services

17  provided by Nutrishare, regardless of whether the patients have

18  met their coinsurance or copayment obligations.  In addition,

19  CIGNA has placed calls to the Patients and their physicians

20  urging them to seek TPN services from an in-network provider

21  rather than Nutrishare.

22        Plaintiffs filed the Complaint, stating eight causes of

23  action: (1) enforcement pursuant to 29 U.S.C. § 1132(a)(1)(B) for

24  failure to pay ERISA plan benefits on behalf of all Plaintiffs;

25  (2) enforcement pursuant to 29 U.S.C. § 1132(a)(2) for breach of

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28  for June 17, 2015.

2

1  fiduciary duty on behalf of all Plaintiffs; (3) violation of

2  California Business & Professions Code §§ 17200 et seq.,

3  California's unfair competition law ("UCL"), on behalf of

4  Nutrishare; (4) breach of implied contract on behalf of

5  Nutrishare; (5) services rendered on behalf of Nutrishare;

6  (6) breach of covenant of good faith and fair dealing on behalf

7  of the Patients; (7) intentional interference with prospective

8  economic advantage on behalf of Nutrishare; and (8) negligent

9  interference with prospective economic advantage on behalf of

10  Nutrishare.

11

12                          II.   OPINION

13      A.   Preemption of Nutrishare's State Law Claims

14       CIGNA first contends that Nutrishare's state law claims are

15  preempted under ERISA.  Although it is disputed by Plaintiffs in

16  their Opposition (Doc. #10, at p. 3 n.1) it does appear CIGNA is

17  arguing that these claims are subject to conflict preemption

18  under ERISA § 514(a), as amended, 29 U.S.C. § 1144(a) ("§

19  514(a)"), and are completely preempted under ERISA § 502(a)

20  ("§ 502(a)").  For the reasons discussed below, the Court finds

21  Nutrishare's claims are completely preempted pursuant to

22  § 502(a).

23           1.   Complete Preemption

24       As noted by the Supreme Court, a state law claim may be

25  "completely preempted" under ERISA because § 502(a) reflects

26  Congress' intent to "so completely pre-empt a particular area

27  that any civil complaint raising this select group of claims is

28  necessarily federal in character."  Metro. Life Ins. Co. v.

                              3

1    <u>Taylor</u>, 481 U.S. 58, 63-64 (1987).   The Supreme Court has

2    formulated a two-prong test to determine whether a claim is

3    completely preempted by ERISA.   <u>Aetna Health Inc. v. Davila</u>, 542

4    U.S. 200, 210 (2004) ("<u>Davila</u>"); <u>Marin Gen. Hosp. v. Modesto &</u>

5    <u>Empire Traction Co.</u>, 581 F.3d 941, 946 (9th Cir. 2009).   Under

6    the test, a state law claim is completely preempted if (1) an

7    individual could have brought the claim under § 502(a); and

8    (2) "where there is no other independent legal duty that is

9    implicated by a defendant's actions."   <u>Davila</u>, at 210.

10         The Ninth Circuit has continuously reaffirmed the principle

11   that "'ERISA preempts the state law claims of a provider suing as

12   an assignee of a beneficiary's rights to benefits under an ERISA

13   plan.'"   <u>Blue Cross of California v. Anesthesia Care Associates</u>

14   <u>Med. Grp., Inc.</u>, 187 F.3d 1045, 1051 (9th Cir. 1999) (quoting <u>The</u>

15   <u>Meadows v. Employers Health Ins.</u>, 47 F.3d 1006, 1008 (9th Cir.

16   1995)).   The dispositive issue presented by this motion is

17   whether Nutrishare brings its state law claims as an assignee of

18   its patients' benefits or as an independent entity based on

19   obligations independent of the ERISA plans.

20         When faced with claims from healthcare providers against

21   insurers, it is imperative that "[c]ourts distinguish between

22   claims brought in the provider's derivative capacity as an

23   assignee of plan benefits, which are preempted by ERISA, and

24   those brought in its independent status as a third-party health

25   care provider, which are not preempted."   <u>Pioneers Mem'l</u>

26   <u>Healthcare Dist. v. Robert F. Kennedy Farm Workers Med. Plan</u>, No.

27   08CV747 WQH (CAB), 2008 WL 4350024, at *4 (S.D. Cal. 2008); <u>see</u>

28   <u>also</u> <u>Catholic Healthcare W.-Bay Area v. Seafarers Health &</u>

1  Benefits Plan, 321 F. App'x 563, 564 (9th Cir. 2008) ("ERISA does

2  not preempt 'claims by a third-party who sues an ERISA plan not

3  as an assignee of a purported ERISA beneficiary, but as an

4  *independent entity* claiming *damages*'") (emphasis in original).

5       "A party can avoid ERISA preemption if it identifies a

6  separate contract between the parties or alleges a specific

7  misrepresentation that does not require interpretation of the

8  ERISA plan and would not affect the relationships of the ERISA

9  participants." Pioneers Mem'l Healthcare Dist., 2008 WL 4350024,

10  at *4; see also Seafarers Health & Benefits Plan, 321 F. App'x at

11  564-65 (finding a provider's claims not preempted where the

12  complaint did "not mention an assignment," but rather asserted

13  claims "based on a direct contractual relationship"); Anesthesia

14  Care Associates, 187 F.3d at 1050-52 (finding a provider's claims

15  not preempted where the insurer and provider executed provider

16  agreements upon which the providers based their contractual

17  claims independent of their patients' rights).

18       2.  Analysis

19     CIGNA contends Nutrishare is "proceeding based solely on

20  assignments of benefits from patients under their respective

21  ERISA health benefit plans" and that Nutrishare "does not allege

22  any basis for seeking payment from CIGNA other than the patient

23  assignments." Reply at pp. 3-4. It points to specific

24  allegations in the Complaint itself that Nutrishare is asserting

25  rights as an assignee of its patients. In the Opposition,

26  Plaintiffs argue that Nutrishare's state law claims "assert

27  directly enforceable rights to payment arising under independent

28  state law duties between parties whose relationship is not

1   governed by ERISA."  Opp. at p. 4.

2        The Court looks to the Complaint itself for guidance.  Each

3   of Nutrishare's state law claims is based on CIGNA's alleged

4   failure to pay benefits rightfully owed to Nutrishare *based on*

5   *its patients' healthcare plans* provided by CIGNA.  Comp. ¶¶ 48-

6   64; 93-110; 121-143.  The Complaint does not assert a basis for

7   Nutrishare's right to payment outside of the assignment of its

8   patients' rights.  In fact, the Complaint specifically points out

9   that no contract exists between Nutrishare and CIGNA and that

10  Nutrishare "has not agreed to comply with, or be bound by, any

11  [CIGNA] insurance contracts, policies or procedures."  Comp.

12  ¶ 26.  Because recovery is based on Nutrishare's status as

13  assignee, the Court finds Nutrishare's state law claims in the

14  third, fourth, fifth, seventh and eighth causes of action are

15  preempted and the Court grants CIGNA's motion to dismiss these

16  derivative claims with prejudice.

17       The Court need not address any remaining preemption

18  arguments put forth by CIGNA regarding these claims.

19       B.   Breach of the Covenant of Good Faith and Fair Dealing

20       In response to CIGNA's motion to dismiss the Patients' sixth

21  claim for breach of the covenant of good faith and fair dealing,

22  plaintiffs first argue that the claim is a "tort cause of action"

23  not "related to" the ERISA plan "but rather is simply a state law

24  that regulates the relationship between insureds and insurance

25  companies.  See Washington Physicians Service Association v.

26  Gregoire, 147 F.3d 1039, 1045 (9th Cir. 1998)."  (As amended on

27  denial of rehearing and rehearing en banc (1998)).  Opp. at pp.

28  4-5.

1    Plaintiffs next argue that even if the Patients' claim

2  relates to an ERISA plan, it is saved from preemption by ERISA's

3  savings clause.  Opp. at pp. 5-6.  The clause provides that the

4  statute shall not be "construed to exempt or relieve any person

5  from any law of any State which regulates insurance."  29 U.S.C.

6  § 1144(b)(2)(A).  Plaintiffs rely on UNUM Life Insurance Company

7  of America v. Ward, 526 U.S. 358, 363-64 (1999).

8    Plaintiffs' reliance on Gregoire and Ward is misplaced as

9  both of these cases are distinguishable.  Gregoire did not

10  address whether ERISA preempted a common law claim of breach of

11  the covenant of good faith and fair dealing.  Rather, it dealt

12  with a Washington state law, the "Alternative Provider Statute,"

13  that directly regulated health plans, providers, and the

14  provision of health services.  147 F.3d at 1042.  Ward dealt with

15  a California state law, the "notice-prejudice" rule, that

16  provided an insurer a defense based on an insured's failure to

17  give timely notice of a claim.  526 U.S. at 363-64, 366-67.  The

18  implied covenant of good faith and fair dealing, relied on by

19  Plaintiffs in the instant case, makes no mention of healthcare

20  plans, providers or services even if it can be applied in that

21  context under certain circumstances.  As CIGNA points out in its

22  Reply, Jabour v. CIGNA Healthcare of California, Inc., 162 F.

23  Supp. 2d 1119 (C.D. Cal. 2001), directly rejected the argument

24  Plaintiffs now assert.  Reply at pp. 4-5.

25    The court in Jabour specifically addressed the issue of

26  whether a claim for breach of the implied covenant of good faith

27  and fair dealing is preempted by ERISA, discussing ERISA's

28  savings clause and the impact of Ward.  162 F. Supp. 2d at 1123-

7

29.   The court concluded that the Supreme Court's decision in

Ward did not undermine the "clearly established line of

precedent" holding that claims for breach of the implied covenant

of good faith and fair dealing were preempted by ERISA and not

"saved" by § 1144(b)(2)(A).   Id.   It found that "as a matter of

common sense" these types of common law, "bad faith" claims are

not state laws which "regulate insurance."   Id.

    Applying Jabour to Plaintiffs' sixth cause of action, the

Court grants CIGNA's motion to dismiss the Patients' claim.

        C.   Breach of Fiduciary Duty

    CIGNA moves the Court to dismiss Plaintiffs' second cause of

action for breach of fiduciary duty pursuant to 29 U.S.C.

§ 1132(a)(2).   CIGNA contends that claims under § 1132(a)(2) can

only be asserted for the benefit of the ERISA plan and because

Plaintiff's claim is based on denials of benefits to these

specific parties, not the plan as a whole, it should be

dismissed.   MTD at pp. 11-12.

    Section 1132(a)(2) provides a right of action to a

"participant, beneficiary or fiduciary for appropriate relief

under § 1109," which deals with liability for breach of fiduciary

duties with respect to ERISA plans.   "Individual beneficiaries

may bring fiduciary actions against the plan fiduciaries, but

they must do so for the benefit of the plan and not their

individual benefit."   Cinelli v. Sec. Pac. Corp., 61 F.3d 1437,

1445 (9th Cir. 1995).

    Plaintiffs argue that they have alleged a "systematic and

willful failure to pay benefits" and thus their claim meets the

standards set for a claim under § 1132(a)(2).   Opp. at pp. 6-9.

1    Furthermore, they contend relief granted "under this claim would

2    benefit not only the Patients, but all participants in their

3    ERISA plans by seeking an injunction to remove [CIGNA] as the

4    . . . administrator for each of the ERISA plans at issue."  Opp.

5    at p. 6.  Ehrman v. Standard Ins. Co., No. C06-05454MJJ, 2007 WL

6    1288465, at *2 (N.D. Cal. 2007), cited by CIGNA, is directly on

7    point and addresses and rejects arguments similar to those put

8    forth by Plaintiffs in support of their claim.

9         In Ehrman, the court dismissed a claim under § 1132(a)(2)

10   because the plaintiff failed to "establish that the claim is for

11   the benefit of the [ERISA] Plan."  2007 WL 1288465, at *2.  The

12   court found the complaint clearly indicated the claim was

13   ultimately for the underpaying of benefits to individual

14   participants in the plan.  Id.  The court disregarded the

15   plaintiff's "conclusory" claim that removal of the defendant

16   fiduciary would benefit the plan as a whole.  Id.  It similarly

17   found unpersuasive allegations that the actions of the defendant

18   were "systematic," "repeated," and "willful."  Id.

19        The Court finds the analysis in Ehrman persuasive.  Simply

20   using the words "systematic" or "willful" in the Complaint does

21   not change the fact that Plaintiffs' § 1132(a)(2) claim is

22   ultimately based on CIGNA's denial of benefits for individual

23   participants.  Similar to the claim in Ehrman, the claim here is

24   not for the benefit of the ERISA plan as a whole despite

25   Plaintiff's conclusory claim that removing CIGNA as administrator

26   would benefit all participants in the plan.  The Court grants

27   CIGNA's motion to dismiss the second cause of action.  However,

28   because it is not clear to the Court that further amendment would

9

1   be futile, the motion to dismiss this claim is granted without

2   prejudice.

3       D.   The Patients' Anonymity

4       CIGNA contends the Patients have failed to establish

5   exceptional circumstances necessary to proceed anonymously in

6   this litigation.  MTD at pp. 14-17.  Plaintiffs contend anonymity

7   is necessary to protect the sensitive medical information of the

8   Patients.  Opp. at pp. 12-13.

9       As they relate to identification of parties in a complaint,

10  the Federal Rules of Civil Procedure require the caption to

11  include the names of all the parties.  Fed. R. Civ. Proc. 10(a).

12  There is a presumption that litigants will use their real names.

13  Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d

14  1036, 1042 (9th Cir. 2010).  There are limited exceptions.

15  "[M]any federal courts, including the Ninth Circuit, have

16  permitted parties to proceed anonymously when special

17  circumstances justify secrecy."  Does I Thru XXIII v. Advanced

18  Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000).  A party may

19  be allowed to use a pseudonym when nondisclosure of the party's

20  identity is necessary to protect the party from harassment,

21  injury, ridicule or embarrassment.  Id. at 1067-68; Doe ex rel.

22  Doe v. Sierra Cnty., No. 2:14-CV-01552-MCE, 2014 WL 5035301, at

23  *1 (E.D. Cal. 2014).  However, a party will only be permitted to

24  retain his or her anonymity when "the party's need for anonymity

25  outweighs prejudice to the opposing party and the public's

26  interest in knowing the party's identity."  Advanced Textile

27  Corp., at 1069; see also Doe v. John F Kennedy Univ., No. C-13-

28  01137 DMR, 2013 WL 4565061, at *3 (N.D. Cal. 2013).

1    The Complaint states:  "The names and identities of Patient

2    One, Patient Two, and Patient Three have been withheld to protect

3    the Patients' confidential health information."  Comp. at p. 1

4    n.1.  It goes on to explain:  "Anonymity in this case is

5    necessary . . . to preserve privacy in a matter of a sensitive

6    and highly personal nature.  The Patients' identifying

7    information will be separately provided to [CIGNA] and be

8    disclosed to this Court as necessary and subject to appropriate

9    protective measures."  Id.

10   Plaintiffs have privately identified to CIGNA the identities

11   of the Patients.  The Court finds the prejudice to the public and

12   to CIGNA at this stage in the litigation is minimal.  However, as

13   the Ninth Circuit has stated, "the balance between a party's need

14   for anonymity and the interests weighing in favor of open

15   judicial proceedings may change as the litigation progresses."

16   Advanced Textile Corp., 214 F.3d at 1069.  The Court therefore

17   will permit the Patients to proceed anonymously for the time

18   being.  However, the parties shall cooperate to the greatest

19   extent possible regarding this issue and craft and propose to the

20   Court protective orders as necessary.

21

22                         III.   ORDER

23   The Court GRANTS CIGNA's motion to dismiss Plaintiffs'

24   second cause of action WITHOUT PREJUDICE.  The Court GRANTS the

25   motion to dismiss Nutrishare's state law claims in the third,

26   fourth, fifth, seventh and eighth causes of action WITH

27   PREJUDICE.  And finally, the Court GRANTS the motion to dismiss

28   the Patients' sixth cause of action WITH PREJUDICE.  The Patients

11

will be allowed to proceed anonymously; however, the issue may be revisited as this litigation progresses.  Plaintiffs shall file an Amended Complaint within twenty days of this Order and CIGNA shall file its responsive pleading within twenty days thereafter. If Plaintiffs elect not to amend their complaint, the case shall proceed on the remaining first cause of action.

    IT IS SO ORDERED.

Dated: July 10, 2015

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE